**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| JOSEPH WILLIAMS, on behalf of himself and all other similarly situated, and MARK BESSEY, | Case No. 24-CV-3748 (NEB/DJF) |
| Plaintiffs, | ORDER ON MOTION TO DISMISS |
| v. | |
| TARGET CORPORATION; TARGET CORPORATION SENIOR VICE PRESIDENT, PAY & BENEFITS; and JOHN AND JANE 1–10 DOES, | |
| Defendants. | |

Plaintiffs pay higher premiums for their group health plan, governed by the Employment Retirement Income Security Act of 1974, 29 U.S.C. Section 1001, *et seq.* ("ERISA"), because the plan imposes a surcharge on tobacco users. Seeking refunds of the allegedly unlawful tobacco surcharge, Plaintiffs brought a putative class action against their employer, Defendants Target Corporation; Target Corporation Senior Vice President, Pay & Benefits; and John and Jane 1–10 Does (collectively, "Target").

Target moves to dismiss, arguing that Plaintiffs lack Article III standing and fail to state a claim upon which relief can be granted. (ECF No. 38.) Because Target's tobacco surcharge does not violate ERISA, the Court grants the motion.

## BACKGROUND[1]

Target sponsors an ERISA-governed employee welfare benefit plan (the "Plan"). (ECF No. 34 ("Am. Compl.") ¶ 1.) Under the Plan, tobacco users pay higher premiums—a "tobacco surcharge"—totaling about $800 per year. (*Id.* ¶¶ 1, 36, 45.) Both Plaintiffs paid this surcharge: Joseph Williams, a current employee, has a dependent who smokes; Mark Bessey, a former employee, uses tobacco. (*Id.* ¶¶ 11–12, 39.) Plaintiffs sued as part of a putative class, claiming that Target levied the surcharge in violation of ERISA. (*Id.* ¶ 1.) This case is one of several tobacco-surcharge complaints filed nationwide.

ERISA contains an antidiscrimination provision: it prohibits certain group health plans from discriminating based on any "health status-related factor," including nicotine dependency, when requiring plan participants to pay premiums. 29 U.S.C. § 1182(b)(1). That said, a carveout provision permits employers to establish "wellness programs" that incentivize health promotion through premium discounts. *Id.* § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(1)(A). Participants who engage in the wellness program are rewarded with a lower premium.

To comply with ERISA's antidiscrimination provision, a wellness program must meet certain requirements outlined in the Public Health Service Act ("PHSA"). 29 U.S.C. § 1185d(a)(1) (providing that the PHSA "shall apply to group health plans" under ERISA); 42 U.S.C. § 300gg-4(j)(3) (PHSA provisions). Per the PHSA, a wellness program must: (1) "be reasonably designed to promote health or prevent disease"; (2) make available the "full reward" to all similarly situated individuals; (3) make available that full reward "at least once each year"; and (4) "disclose in all plan materials describing the

---

[1] The Court takes all factual allegations in the amended complaint as true, as it must on a motion to dismiss. *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014).

terms of the wellness program the availability of a reasonable alternative standard." 42 U.S.C. § 300gg-4(j)(3). In addition, the Department of Labor ("DOL") incorporated these requirements into federal regulations with further specifications. 29 C.F.R. § 2590.702.

Target administers a wellness program that it contends fits within the antidiscrimination provision: A participant can save $800 (*i.e.*, escape the surcharge) if the participant is tobacco-free. (Am. Compl. ¶ 5.) Participants who did not start the year tobacco-free can still qualify for this reward by quitting tobacco use or completing Target's designated tobacco cessation program. (*Id.* ¶ 37.) In ERISA-speak, these options are called a "reasonable alternative standard." 42 U.S.C. § 300gg-4(j)(3)(D).

Plaintiffs assert that the Plan violates ERISA and its implementing regulations in two different ways. First, they claim that the wellness program fails to provide the "full reward" to all eligible participants, as required by the PHSA. (Am. Compl. ¶ 6.). And second, Plaintiffs claim that the Plan fails to provide notice—that the recommendations of a participant's physician will be accommodated—required by DOL regulations. (*Id.* ¶ 7.)

Additionally, Plaintiffs allege that Target breached its fiduciary duty by (a) implementing a group health plan in violation of ERISA and (b) mismanaging proceeds from the tobacco surcharge. (*Id.* ¶¶ 7, 47–49.)

Target now moves to dismiss the amended complaint for lack of subject matter jurisdiction and for failure to state a claim. (ECF No. 38.)

**ANALYSIS**

**I.      Standing**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the Court's subject-matter jurisdiction. *Two Eagle v. United States*, 57 F.4th 616, 620 (8th Cir. 2023). Jurisdictional questions are generally "for the court to decide at the outset." *Magee v. United States*, 9 F.4th 675, 682 (8th Cir. 2021) (citation modified). As the parties invoking federal jurisdiction, Plaintiffs bear the burden of proving it. *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 815 (8th Cir. 2006).

Because Target presents a facial challenge to the Court's subject-matter jurisdiction, the Court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (citation omitted). Thus, the Court "must accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008).

As in every case, the "threshold question" is whether Plaintiffs have Article III standing. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024). To establish standing, a claimant "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

"[T]he two key questions in most standing disputes are injury in fact and causation" because causation and redressability "are often 'flip sides of the same coin.'" *All. for Hippocratic Med.*, 602 U.S. at 380–81 (citation omitted). An injury in fact must be

concrete and particularized; it must be "actual or imminent, not speculative." *Id.* at 381. As for causation, a plaintiff must show that their injury "likely was caused or likely will be caused by" a defendant's conduct. *Id.* at 382.

Because standing "is not dispensed in gross," the Court separately analyzes the two main claims Plaintiffs bring. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). For the purposes of standing analysis, the Court assumes that "on the merits the plaintiffs would be successful." *Am. Farm Bureau Fed'n v. U.S. Env't Prot. Agency*, 836 F.3d 963, 968 (8th Cir. 2016).

### A.      *Tobacco Surcharge Claims*

Target argues that Plaintiffs do not have standing to challenge the Plan because their monetary injury—biweekly paycheck deductions—does not stem from the alleged ERISA violations identified in the amended complaint. (ECF No. 40 at 39.[2]) For example, Plaintiffs do not claim that they completed the tobacco cessation program and were eligible to receive a reimbursement of that year's deductions, but that Target denied their request. Nor do Plaintiffs allege that, had they received notice that their physicians' recommendations would be accommodated, they would have procured a doctor's note exempting them from the surcharge. Target adds that even if it were to cure the alleged deficiencies in its wellness program, Plaintiffs would still be subject to the tobacco surcharge. (*Id.* at 40.) Accordingly, Target claims that Plaintiffs' injury is traceable only to a "bare procedural violation," which cannot satisfy Article III's standing requirements. (*Id.* at 38 (quoting *Spokeo*, 578 U.S. at 342).)

---

[2] All page citations to the record reference ECF pagination.

Target's argument fundamentally misinterprets Plaintiffs' claimed injury, which is best understood as "[p]aying a fee they *should not have been charged*" in the first place—not the mere fact that Target made biweekly paycheck deductions. *McKeage v. Bass Pro Outdoor World, LLC*, 943 F.3d 1148, 1150 (8th Cir. 2019) (emphasis added). ERISA prohibits Target from imposing tobacco surcharge if its wellness program does not comply with the PHSA's requirements. 29 U.S.C. §§ 1182(b)(1), 1182(b)(2)(B), 1185(a)(1). Plaintiffs expressly allege that the wellness program is noncompliant. (Am. Compl. ¶ 1.) And paying a tobacco surcharge that they had "a statutory right not to be charged" affects Plaintiffs "in a 'personal and individual way.'" *McKeage*, 943 F.3d at 1150 (quoting *Spokeo*, 578 U.S. at 339). Causation and redressability flow from this same reasoning: Plaintiffs' injury is traceable to Target's decision to levy an unlawful tobacco surcharge, which would be redressed by a refund of that surcharge.

Nearly every other court to address standing in the tobacco-surcharge context agrees. *Noel v. Pepsico, Inc.*, No. 24-CV-7516 (CS), 2026 WL 558118, at *7 (S.D.N.Y. Feb. 27, 2026) ("[S]everal courts have recently held that plaintiffs have standing where they claim that they paid a tobacco surcharge imposed pursuant to a noncompliant wellness program, regardless of whether they were directly impacted by the alleged shortcomings of the program." (collecting cases)).

## B.     *Fiduciary Duty Claims*

Plaintiffs assert that Target has breached multiple fiduciary duties by engaging in two distinct buckets of conduct: (a) administering a discriminatory group health plan in violation of ERISA; and (b) misusing Plan assets for Target's own benefit. (Am. Compl. ¶¶ 70, 72; ECF No. 46 at 38, 42.) The first bucket is derivative of Plaintiffs' claims that Target imposed an unlawful surcharge, and thus the Court concludes that Plaintiffs

have standing to pursue this fiduciary duty claim for the same reasons as above. But the second bucket advances an independent theory of liability, and, as a result, cannot ride the same coattails. Because Plaintiffs fail to identify any concrete injury they suffered as a result of Target's alleged self-dealing, they do not have Article III standing to pursue a breach of fiduciary duty claim on that basis.

According to Plaintiffs, Target engaged in self-dealing by misusing proceeds from the tobacco surcharges. (Am. Compl. ¶¶ 47–48.) This allegedly involved depositing the proceeds into Target's general accounts; retaining those funds, thereby earning interest; and using that money to offset its own financial contributions to the Plan. (*Id.*)

Plaintiffs' theory of harm is murky at best. They broadly assert that Target had a duty to use the surcharge proceeds to support coverage for participants' health insurance—that is, to reduce the premiums paid by non-tobacco users. (ECF No. 46 at 39; Am. Compl. ¶ 49.) Plaintiffs aver that Target's failure to do so injured the Plan and its participants collectively. (ECF No. 46 at 39.)

Absent from the amended complaint, though, is any individual injury to Plaintiffs, who would not have benefitted from any reduced premiums. And although Plaintiffs also assert a breach of fiduciary duty in a representative capacity on behalf of the Plan, that does not exempt Plaintiffs from showing the requisite Article III injury-in-fact. As the Eighth Circuit has held, "the limits on judicial power imposed by Article III counsel against permitting participants or beneficiaries who have suffered *no* injury in fact from suing to enforce ERISA fiduciary duties on behalf of the Plan." *Harley v. Minn. Min. & Mfg. Co.*, 284 F.3d 901, 906 (8th Cir. 2002); *see also Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir. 2007) ("Merely because Plaintiffs claim that they are suing on behalf of their respective ERISA plans does not change the fact that they must also

7

establish individual standing."); *accord Chirinian v. Travelers Cos., Inc.*, No. 24-CV-3956 (LMP/DTS), 2025 WL 2147271, at *4 (D. Minn. July 29, 2025) (applying similar reasoning in tobacco-surcharge context). Because Plaintiffs fail to identify any concrete, particularized injury stemming from Target's alleged self-dealing, they lack standing to pursue breach of fiduciary duty claims on that basis.[3]

## II.     ERISA Claims

Thus, the Court turns to the merits of the ERISA claims: To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

At this stage in the litigation, the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). The complaint's factual allegations must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court's determination of whether a plaintiff has met this standard is "context-specific" and requires it to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

---

[3] The parties also dispute whether Target's handling of the surcharge proceeds resulted in any loss to the Plan itself. The Court need not reach this issue because Plaintiffs do not meet the threshold requirement of individual standing.

## A.     Retroactive Reimbursement

Under the PHSA, a wellness program must ensure that the "full reward" is available to all participants. 42 U.S.C. § 300gg-4(j)(3)(D). Again, the "reward" is better understood as an incentive: A participant who is tobacco-free or completes a cessation program does not have to pay a tobacco surcharge. (Am. Compl. ¶ 37.) Because the parties do not meaningfully dispute that providing the "full reward" requires retroactive reimbursement of surcharges levied earlier in the year for newly-eligible participants, the Court assumes this is true. The dispute instead centers on whether Target actually provides those refunds. The parties offer conflicting interpretations of the Plan's terms, but they are not on equal footing.

When a plan, by its terms, gives the employer discretionary authority to interpret the plan, courts review the employer's interpretation for an abuse of discretion. *Hawkeye Nat'l Life Ins. Co. v. AVIS Indus. Corp.*, 122 F.3d 490, 496–97 (8th Cir. 1997) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Here, the Summary Plan Description ("SPD") explicitly grants Target such authority. (ECF No. 42-3 at 87 ("[Target] shall also have full discretionary authority to construe the terms of the Plan[].").)

Under abuse-of-discretion review, the Court examines: (1) whether Target's interpretation is consistent with the goals of the Plan; (2) whether it renders any language in the Plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of ERISA; (4) whether Target has interpreted the provision at issue consistently; and (5) whether the interpretation is contrary to the clear language of the Plan. *Donaldson v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 863 F.3d 1036, 1039 (8th Cir. 2017). That said, "the dispositive principle remains that where plan

9

fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace it with an interpretation of their own." *Id.* (citation modified).

The relevant portion of the SPD reads as follows:

### TOBACCO SURCHARGE

**Tobacco Surcharge**
Every year, all team members enrolling in benefits must indicate whether they and covered members of their families use tobacco or nicotine products. This includes tobacco/nicotine use in any form (including but not limited to cigarettes, e-cigarettes, vaping and hookah).

If you don't share your tobacco use status, you will automatically default to a tobacco user. Tobacco users pay an $800 tobacco surcharge for their medical plan and higher premiums for benefits including Long-term Disability, Supplemental Life Insurance and Critical Illness.

The maximum household tobacco surcharge amount is $2,400. The $800 tobacco surcharge applies to the following individuals enrolled in the medical plan:
- Team member who indicates tobacco use or does not share tobacco status;
- Spouse/domestic partner who indicates tobacco use or does not share tobacco status; and
- Any dependents age 18+ who indicate they are tobacco users or do not share their tobacco status, regardless of how many dependents are tobacco users.

You can change your tobacco-use status and not be subject to the surcharge once you are tobacco-free for six months or you complete Target's designated tobacco cessation program. Go to targetpayandbenefits.com and click on "More Well-being Offerings" to learn how to participate in the tobacco cessation program.

(ECF No. 42-3 at 84 (emphasis added).)

Target asserts that the SPD provides for retroactive reimbursement, emphasizing that it defines the surcharge as an annual, aggregate "$800 tobacco surcharge." (ECF No. 47 at 9–10.) Under this construction, the SPD's provision that a participant can become "not [] subject to the surcharge" means the participant is excused from the entirety of the $800 annual obligation. (ECF No. 42-3 at 84.) In other words, Target's interpretation treats the tobacco surcharge as all-or-nothing: Within a given year, a tobacco-using participant owes all $800, and qualifying participants owe nothing. Under this framework, meeting the exemption criteria mid-year does not just stop future deductions; it resets the participant's yearly obligation to zero. This mechanism implies that the participant qualifying for an exemption mid-year is entitled to retroactive reimbursement of the paycheck deductions levied earlier in the year. The fact that Target

10

assesses the surcharge through biweekly paycheck deductions does not alter this analysis: Collecting the surcharge in regular installments of a larger whole is still consistent with defining the surcharge as a single, indivisible annual liability. Additionally, this construction ensures that the term "surcharge" retains a consistent meaning throughout this section of the SPD. *Jet Midwest Int'l Co. v. Jet Midwest Grp.*, 932 F.3d 1102, 1106 (8th Cir. 2019). Accordingly, the Court concludes that Target's construction of the SPD is reasonable and entitled to deference.

Plaintiffs' argument that the Plan does not provide the full refund stems from a contrasting read of that same language—not any concrete factual allegation. (Am. Compl. ¶¶ 37–38; ECF No. 46 at 32–33.) Plaintiffs do not assert that they were entitled to a reimbursement but did not receive it. *Cf. Sec'y of Lab. v. Macy's, Inc.*, No. 17-CV-541 (DRC), 2021 WL 5359769, at *13 (S.D. Ohio Nov. 17, 2021) (noting that the plaintiffs alleged that plan participants were not reimbursed despite eligibility). Rather, the amended complaint emphasizes the SPD's provision that a participant will "not be subject to the surcharge *once* you are tobacco-free for six months or you complete Target's designated tobacco cessation program." (ECF No. 42-3 at 84 (emphasis added).) Plaintiffs contend that the most natural reading of the SPD implies only prospective removal of the surcharge, rather than removal of the surcharge for the entire year. (ECF No. 46 at 32–33.)

But because Target has discretionary authority to construe the SPD, all that matters is whether Target's interpretation is reasonable. That Plaintiffs supplied an alternative interpretation does not render Target's unreasonable. *Wengert v. Rajendran*, 886 F.3d 725, 729 (8th Cir. 2018) ("[T]he discretionary decision of a plan administrator is not unreasonable merely because a 'different, reasonable interpretation could have been made.'" (citation omitted).) Thus, the Court accepts that the SPD provides for retroactive reimbursement in compliance with the "full reward" required by ERISA.

11

**B.    Notice**

Next, the parties dispute whether ERISA requires Target to provide notice that the it will accommodate the recommendations of a plan participant's physician when determining whether the participant has met the reasonable alternative standard to avoid the surcharge.[4] Plaintiffs locate this notice requirement in a regulation promulgated by the Department of Labor, which Target argues is contrary to law and thus unenforceable.[5] (Am. Compl. ¶ 45; ECF No. 40 at 25.) The Court concludes that ERISA does not require physician-accommodation notice by answering two sequential questions:

(1) Does the relevant statute require physician-accommodation notice?

(2) If the statute does not require physician-accommodation notice, is the regulation nevertheless entitled to some deference as an exercise of delegated authority to implement the statute's more general notice requirement?

*1.    Statutory Interpretation*

"[A] reviewing court has the responsibility 'to decide whether the law means what the agency says.'" *Minn. Telecom All. v. Fed. Commc'ns Comm'n*, 175 F.4th 905, 920–21 (8th

---

[4] Plaintiffs also assert that the Plan gives deficient notice of the availability of a reasonable alternative standard because it does not provide the "full reward" in the first place. (Am. Compl. ¶ 7.) As the Court concludes above, the Plan's reasonable alternative standard does provide the "full reward" and so does not violate ERISA. Accordingly, the Court need not address this derivative claim of deficient notice.

[5] Because the amended complaint cites only the regulation, the Court does not understand Plaintiffs to argue that the Plan fails to comply with the PHSA itself. (Am. Compl. ¶¶ 44–45.)

Cir. 2026). Here, the Department of Labor says that plan sponsors must provide notice that the "recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(3)(v). So the Court must decide whether the law under which the DOL purportedly implemented this regulation—the PHSA, as incorporated into ERISA—imposes that same obligation. It does not.

The Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) "requires courts to 'exercise independent judgment in determining the meaning of statutory provisions.'" *Minn. Telecom All.*, 175 F.4th at 921 (quoting *Loper Bright*, 603 U.S. at 394). Reviewing courts may still "seek aid from the interpretations of those responsible for implementing particular statutes," but the threshold task of reviewing courts is to "use every tool at their disposal to determine the best reading of the statute." *Loper Bright*, 603 U.S. at 394, 400. The Court thus turns to "traditional tools of statutory construction." *Minn. Telecom All.*, 175 F.4th at 921.

The Court begins, of course, with "the statute's plain language, giving words the meaning that proper grammar and usage would assign them." *United States v. Lester*, 92 F.4th 740, 742 (8th Cir. 2024) (citation modified). The notice requirement prescribed by Congress in 42 U.S.C. Section 300gg-4(j)(3)(E) ("subparagraph (E)") provides that:

> The plan or issuer involved shall disclose in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard (or the possibility of waiver of the otherwise applicable standard) required under subparagraph (D).

Target contends, and Plaintiffs do not dispute, that Target's wellness program offers a reasonable alternative standard to being tobacco-free: the tobacco cessation program.

Through subparagraph (E), Congress plainly enumerates two items for disclosure (the availability of reasonable alternative standard and the possibility of waiver)—and notice that a physician's recommendations will be accommodated is not one of them. Nor is the physician-accommodation notice requirement located in subparagraph (D), which subparagraph (E) cross-references.[6] This omission is significant, as "the expression of one thing excludes others not expressed." *Watt v. GMAC Mortg. Corp.*, 457 F.3d 781, 783 (8th Cir. 2006). Courts should "ordinarily resist reading words or elements into a statute that do not appear on its face." *United States v. Jungers*, 702 F.3d 1066, 1075 (8th Cir. 2013) (citation omitted).

The surrounding statutory structure reinforces the exhaustive nature of subparagraph (E)'s notice requirement. Subsection (j)(3) sets out a checklist of program requirements that a plan sponsor must meet to comply with ERISA. 42 U.S.C. § 300gg-4(j)(3). This subsection functions as a safe-harbor provision by telling regulated parties what they must do to avoid liability. The PHSA uses mandatory language: if a wellness program satisfies each requirement in the checklist, it "shall not violate" ERISA. *Id.* Subparagraphs (D) and (E) are two of five statutory tick-boxes. If subparagraph (E) is read as allowing agencies to promulgate additional disclosure requirements, then a plan complying with the text of subparagraph (E) could nevertheless be liable for violating a notice requirement that Congress did not impose. This gives the statute a scope unsupported by its text. As a general rule, courts "do not lightly assume that Congress

---

[6] Although Plaintiffs do not make this argument, the Court acknowledges that subparagraph (D)(ii) authorizes plan sponsors to "seek verification, such as a statement from an individual's physician" that a participant cannot safely quit smoking. *See* 42 U.S.C. § 300gg-4(j)(3)(D)(ii). But this provision merely permits plan sponsors to verify claims of medical difficulty—it does not create a substantive commitment to honor physician recommendations.

has omitted from its adopted text requirements that it nonetheless intends to apply." *Jungers*, 702 F.3d at 1075 (citation omitted). To do otherwise "would require [the Court] to add words to the statute that [Congress] did not supply and create additional rights beyond those expressly enumerated." *Graff v. Brighthouse Life Ins. Co.*, 109 F.4th 1118, 1123 (8th Cir. 2024) (citation modified).

Altogether, the "best reading of the statute"—that is, "the one the court would have reached if no agency were involved"—is that ERISA does not impose a physician-accommodation notice requirement. *3M Co. v. Comm'r of Internal Revenue*, 154 F.4th 574, 577 (8th Cir. 2025) (quoting *Loper Bright*, 603 U.S. at 400). The Court could end its analysis here. *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018) (noting that when a statute is unambiguous, "our inquiry begins with the statutory text, and ends there as well") (citation omitted). Nevertheless, the Court will address Plaintiffs' counterarguments.

2.      *Delegation*

Plaintiffs implicitly concede that the statute itself does not require the physician-accommodation notice outlined in the regulation. Instead, they argue that the DOL regulation implements subparagraph (E) in a manner consistent with the statutory framework and as expressly authorized by Congress. (ECF No. 46 at 30.) In other words, subparagraph (E) requires that a plan sponsor disclose the availability of a reasonable alternative standard, and the regulation prescribes the details of what to include in that notice. (*Id.* at 32.)

The Supreme Court acknowledged in *Loper Bright* that Congress may still explicitly delegate authority to agencies. 603 U.S. at 394–95. The Court explained:

15

> In a case involving an agency, of course, the statute's meaning may well be that the agency is authorized to exercise a degree of discretion. Congress has often enacted such statutes. For example, some statutes expressly delegate to an agency the authority to give meaning to a particular statutory term. Others empower an agency to prescribe rules to "fill up the details" of a statutory scheme, or to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as "appropriate" or "reasonable."

*Id.* (citation modified). In these circumstances, the reviewing court must "independently interpret the statute" to "fix[] the boundaries of the delegated authority" and "ensur[e] that the agency has engaged in 'reasoned decisionmaking' within those boundaries." *Id.* at 395 (citation omitted).

Here, Plaintiffs contend that Congress authorized the DOL to "fill up the details," thus warranting more the more deferential "reasoned decisionmaking" judicial review of the agency's regulation. They locate this delegation in two broad grants of authority. 29 U.S.C. Section 1191c of ERISA provides that "[t]he Secretary . . . may promulgate such regulations as may be necessary or appropriate to carry out the provisions of this part," which encompasses the PHSA. 29 U.S.C. §§ 1185d, 1191c. And 42 U.S.C. Section 300gg-4(n), the section of the PHSA governing group health plans, notes that "[n]othing in this section shall be construed as prohibiting the Secretaries of Labor, Health and Human Services, or the Treasury from promulgating regulations in connection with this section." However, "[c]itations to general authority/housekeeping delegations are noticeably absent from the examples offered by the *Loper Bright* Court as delegations of discretionary authority warranting reasoned decisionmaking review." Kristin E. Hickman & Amy J. Wildermuth, *Harmonizing Delegation and Deference after* Loper Bright, 100 N.Y.U. L. Rev. 1924, 1972 (2025).

In arguing that these general delegations of authority are still entitled to deference, Plaintiffs cite other tobacco surcharge cases, which are distinguishable. (ECF No. 46 at 35–36.) Many courts discussing the physician-accommodation notice requirement do not analyze it under *Loper Bright*. *See, e.g.*, *Waggoner v. Carle Found.*, No. 24-CV-2217 (CSB), 2025 WL 4743424, at *21–23 (C.D. Ill. Sept. 16, 2025); *Fisher v. GardaWorld Cash Serv. Inc.*, No. 24-CV-837 (KDB/DCK), 2025 WL 2484271, at *8 (W.D.N.C. Aug. 28, 2025). And the courts that do reference *Loper Bright* expressly acknowledge that the briefing before them was undeveloped. *See, e.g.*, *Bokma v. Performance Food Grp., Inc.*, 783 F. Supp. 3d 882, 896–97 & n.4 (E.D. Va. 2025); *Chirinian*, 2025 WL 2147271, at *10. To the Court's knowledge, only one other tobacco surcharge case squarely analyzes general delegation in this context: *Trout v. Meijer, Inc.*, No. 25-CV-1378 (HYJ), 2026 WL 1098213, at *7–8 (W.D. Mich. Apr. 23, 2026). Although the *Trout* court concluded that ERISA's general delegation authorized the DOL to promulgate the physician-accommodation notice requirement, it was bound by Sixth Circuit precedent not applicable here. *Id.* (noting that "the Sixth Circuit has continued to cite the *Chevron*-era principle that a court's review does not turn on whether Congress's delegation of authority was general or specific" (citation modified)).

If anything, Eighth Circuit *dictum* suggests that only a specific delegation triggers the more deferential "reasoned decisionmaking" review. *Minn. Telecomm. All.*, 175 F.4th at 931 (reserving review of whether the statute at issue in that case "delegates discretionary specific authority" per *Loper Bright*). Such analysis "necessarily include[s] careful review of whether the agency's proposed exercise of its discretionary remedial power furthers a specific statutory mandate and is directly and closely tied to that mandate." *Id.* (citation modified).

17

Seeing no specific statutory mandate here, the Court declines to deviate from its independent judgment that ERISA itself does not require Target to disclose that it will accommodate physicians' recommendations. Thus, Target's omission was lawful.

## III. Fiduciary Duty Claim

Plaintiffs' remaining claim for breach of fiduciary duty depends on the existence of an ERISA violation. *See* 29 U.S.C. § 1132(a)(3) (providing a remedy for a violation of "any provision of this subchapter"). As established above, the Court concludes that the Plan does not violate ERISA; Plaintiffs cannot prevail on this count.

### CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, Defendants' Motion to Dismiss (ECF No. 38) is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 22, 2026                                BY THE COURT:

                                                    s/Nancy E. Brasel
                                                    Nancy E. Brasel
                                                    United States District Judge